MUNSON (TILLOTSON v.). See Case No. 14,051.

## Case No. 9,936.

### MURATI v. LUCIANI.

[1 Baldw. 49.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1827.

EVIDENCE — HANDWRITING — PROOF — COMPARISON OF HANDWRITING.

Difficulty of giving satisfactory proof of handwriting. Is a comparison of hands evidence in a civil case?

[1] [Reported by Hon. Henry Baldwin, Circuit Judge.]

The declaration in this case stated: 1. That in consideration of 600 dollars, advanced by the plaintiff [G. Murati,] to the defendant [T. Luciani,] the defendant undertook to send from Philadelphia, by the ships Florian and Langdon Cheves, to the plaintiff, then residing in Charleston, South Carolina, the value of the said 600 dollars in goods, on or before the 25th of December, 1826. Charges that he did not perform this promise. 2. For 600 dollars lent and advanced. 3. On a promissory note, dated 24th December, 1826, for 600 dollars, to be paid in April, 1827, given in consideration of 200 dollars received by the defendant from the plaintiff in August, 1825, and 400 dollars, the plaintiff's part of the profit in a mutual business carried on between them. 4. The same sum lent and advanced, paid, laid out and expended by the plaintiff for the defendant. 5. On an account had and settled between the parties.

Mr. Stroud, for plaintiff.

This suit is brought on two promissory notes; one for the delivery of goods, the other for the payment of money. These notes were given at Charleston on the 26th of November, 1826, at which time the plaintiff resided there, and the defendant was there on a visit.

Mr. Perkins, for defendant, denied that the signatures to the notes were genuine; they were not the handwriting of the defendant; said that the plaintiff never had the command of 60 dollars; that he arrived here from Europe in the fall of 1825, and had married the defendant's mother; that he was entirely destitute of money, and could not pay his passage. If the signatures are genuine, we shall show that there is a balance due from the plaintiff to the defendant of 1971 dollars 45 cents.

A great number of witnesses were examined, letters read, and other evidence given on the question of the genuineness of the signatures to the notes, the ability of the plaintiff to be possessed of so much property, &c.

Stroud & Ingraham, for plaintiff.
Perkins & Peters, for defendant.


HOPKINSON, District Judge (charging jury). In this case the labouring oar will be with the jury. There is no question of law to be decided; but you must endeavour to come at the truth of the transactions between the parties, from the evidence they have respectively laid before you. You have a considerable mass of incongruous testimony to separate and compare, and contradictory witnesses to reconcile, if you can, or to credit or discredit, as you shall believe or disbelieve them. It is one of the grievances that courts and juries may complain of, that men enter into transactions of business with a most unguarded confidence in each other, or a careless inattention to the forms and proofs which would at all times show the true nature of their dealings; and when afterwards, as it frequently happens, they fall out and criminate each other, they come to you to settle their differences and do justice between them, without bringing with them the means by which you can discover with any satisfactory certainty what is the real truth of their case. They assert and deny, they criminate and recriminate, with equal confidence and equal deficiency of proof, and ask from you a just decision, without affording the means of arriving at it. In this situation you must do the best you can between the parties, and will at least do them the service of putting an end to the controversy, which is, perhaps, the best part of the decision of nine cases in ten. This action is brought on two promises in writing: The first, dated the 24th of November, 1826, for the payment of 600 dollars in money; the other, dated on the 26th of the same month, for the delivery of goods at Charleston of the value of 600 dollars.

The defence consists of two parts: 1. A denial of the genuineness of the signatures to the notes: the defendant says they are not his handwriting; that he never signed or gave to the plaintiff any such notes. 2. An account against the plaintiff, as a set-off to his demand, which, if proved, will make a balance in favour of the defendant. The first ground is by far the most important, as it involves questions of the character of the parties of the most serious consequence. On the one side, it is neither more nor less than a charge of forgery; and the other, of a false and fraudulent denial of a true and genuine instrument to escape from the payment of a just debt. You must decide this grave question: Are these signatures, or either of them, in the handwriting of the defendant? Witnesses have been produced on the part of the plaintiff to prove the truth of the writing; and on the other hand, the defendant supports his denial also by the testimony of witnesses, and by circumstances which he alleges render it improbable, if not impossible, that he should have given these notes to the defendant, or could be indebted to him. For the plaintiff, Jacob W. Lehr has testified, "that he believes the signature to the note of the 26th November, for the delivery of the goods, is the handwriting of the defendant; that he has frequently seen his writing and copied it." The witness being shown a list of goods to be sent by the defendant to the plaintiff, dated 29th November, 1826, says, "It looks like the signature of defendant, but he is not certain of it; he will not say any thing about it:" so of the signature to the note of the 24th of November, it looks like his signature, but would not like to say any thing about it. You have observed that the plaintiff offered an application made by the defendant to the insolvent court, dated 12th January, 1824, having to it three signatures of the defend-

ant; that the jury might compare them with the signatures to the notes. Farmers' Bank v. Whitehill, 10 Serg. & R. 110. This evidence was admitted to go to you, other evidence having been given in support of it; but I would not be understood to have expressed any decided opinion upon the question; it may be more deliberately examined hereafter should it be necessary. The plaintiff rested his proof of the genuineness of those writings on the testimony of J. W. Lehr, afterwards supported by Mr. Cope, and signatures of the defendant to his application to the insolvent court. The defendant has produced to you, in the first place, witnesses to prove the destitute poverty of the plaintiff on his arrival in this country in the fall of 1825; that he had no money to pay his passage, for which his goods were retained by the captain of the ship: with other circumstances indicative of poverty. A witness also proved the handwriting of the plaintiff to a note dated at Charleston, 27th November, 1826, payable to the defendant for 300 dollars. The same witness proved a certain memorandum to be in the handwriting of the plaintiff; that he saw him write it. It was a memorandum or list of goods that the defendant sent to Charleston by the plaintiff. The goods were put in the storehouse of plaintiff in Charleston, until a store was procured to put them in. Other goods were afterwards received from the defendant. The witness left Charleston in November, 1826, after the arrival of the defendant there. John Baker, captain of the Langdon Cheves, testified that he took the plaintiff a passenger to Charleston, with goods belonging to the defendant; that the plaintiff had no property in them; that plaintiff was supplied at Charleston with goods by the defendant; that the defendant paid for the freight of the goods, and for the passage of the plaintiff. Several witnesses testified their belief that the signatures to the notes were not in the handwriting of the defendant. All of which evidence is now before you, and from it you are to say whether these notes are true or false. Your task is a difficult one. The skill in imitating the writing of another is sometimes so perfect, that the most experienced are at fault in detecting the falsehood. You know that the bank notes are often so well imitated as to deceive the most wary, and that the officers of the very bank defrauded have been deceived, and received them as genuine. In a late interesting case tried in the state of New York, the question arose on the genuineness of the signature of the defendant to a promissory note, on which the action was brought. The defendant was a lady of the highest respectability and of independent fortune. Nearly one hundred witnesses were examined, comprehending clerks and cashiers of banks, particularly skilful in the examination of writing; also the intimate friends and acquaintances of the party, having long and repeated opportunities to become acquainted with her writing; and yet no certainty was arrived at, as the witnesses expressed contradictory opinions and belief, and were, if I recollect rightly, about equally divided. Such is the proof of handwriting, when made either by the direct testimony of witnesses professing to be acquainted with it, or by a comparison with other writing admitted to be genuine. But it is upon such proof that jurors are often called upon to decide, and they must do so by a careful consideration of all the evidence, and of the circumstances attending the transaction, weakening or strengthening the probability of the truth of the instrument, and keeping in mind, that the burthen of proof lies on the party producing the instrument.

The defendant has given in evidence some circumstances to support his denial of these notes, which will probably have no inconsiderable weight on your mind, if you shall not be satisfied by the more direct testimony. In the first place you have proof of the absolute poverty of the plaintiff, from his arrival in this country down to his passage to Charleston with Captain Baker, who took him to Charleston, then in the employment of the defendant, and taking his, the defendant's, goods to be disposed of in that city; and but a short time before it is alleged that these notes were given. We have seen no means he had in that short period to acquire property. While in Charleston, even by his own account, he sold but little; hardly more than was required for his daily expenses. He could not pay some small bills, nor his passage, or the freight of the goods he took with him. His marriage does not relieve him from this difficulty, as we have no account of any property obtained by his wife; indeed, after his marriage, he writes that he is unable to get any money to remit. One of the items making up the note of the 24th of November, and expressly mentioned in it, refers back to the 25th of August, and the rest is said to have been the profits of the mutual business carried on by the plaintiff and defendant. But where did he get the 200 dollars first mentioned, and what was the business which produced him the remaining 400 dollars? We have no account of either. His journey to New York was, clearly, solely on Luciani's account. The case of the plaintiff is certainly very deficient in proof of the means by which the defendant could become indebted to him; but, nevertheless, if you are satisfied that the notes are true and genuine instruments, it will be enough for you, as they, prima facie, prove their own consideration. Another fact is a proof to you which thickens the mystery of these transactions, and increases your difficulty in comprehending them; I refer to the note for 300 dollars given by the plaintiff to the de-

fendant, dated on the 27th of November, 1826. This was but three days after the first note, and one day after the second on which the plaintiff brings this suit! Why should the plaintiff give his note to the defendant for 300 dollars when he held his notes for a much larger amount? Why not credit the 300 dollars against these notes? The plaintiff charges this note as a forgery by the defendant: thus they charge each other. It is really unreasonable in these men to expect that you can discover the truth of their dealings, when they have involved them in so much contradiction and obscurity. If you shall fail to reach the justice of the case, they will have no reason to complain. So far, it would seem to me that on the question of the genuineness of these notes, the preponderance of evidence is against them; but another paper is produced which puts us all at fault again; I mean the list of goods dated the 29th of November, 1826; this has created the greatest difficulty to my mind. You will recollect that the note of the 26th of November is for the delivery of goods by the defendant to the plaintiff at Charleston, of the value of 600 dollars. The paper or list produced, dated three days after the note, is admitted to be genuine; it is signed by the defendant with his own proper hand. Is this, then, the invoice or list of the goods which he undertook to furnish to the plaintiff by the note of the 26th of November? If it is, then it proves the genuineness of that note, as they must be taken to be parts of the same transaction; yet even if this be so, it does not conclusively follow that the note for the delivery of the goods was given in consideration of the sum of 600 dollars paid and advanced by the plaintiff to the defendant. It affords proof of the genuineness of the note, but not of the consideration on which it was given. What does this paper allude to? How did it come into the possession of the plaintiff? It is headed, "What is to be received by the Langdon Cheves, in Charleston, before the 25th of December, 1826?" and is signed by Luciani. Now the note of the 26th of November promising to deliver the goods, also states that they shall be delivered before the 25th of December, and so far we have a connection between them. The defendant avers that it was nothing more than a memorandum of the goods he was to send, on his return to Philadelphia, to the plaintiff at Charleston, to be sold by him for, and on account of, him, the defendant. If this were so, why was it signed by the defendant? As a mere memorandum to govern him in the selection of the goods he was to send, this was not necessary. But the greater difficulty is, how came it in the hands of the plaintiff? for if it was to assist the memory of the plaintiff, he should have brought it with him to Philadelphia. The counsel of the defendant have charged the plaintiff with

bold fraud in getting possession of this paper, they do not know how, and using it as the means of perpetrating the still bolder fraud in fabricating these notes. It is, they allege, by copying the signature of the defendant to this list of goods, that he has been able to forge the name of the defendant to the notes. This argument certainly assumes that the notes are false; and if they be so, it is of little importance by what means or assistance the forgeries were committed. This is the question submitted to you, with a remarkable deficiency of evidence to guide you in the decision of it for the one side or the other. If you shall be finally satisfied that these notes are genuine, and that they are bona fide evidences that the debts and claims mentioned in them are due from the defendant, you will then take up the account which the defendant has produced, under his plea of set-off, against the plaintiff, and strike the balance as it shall appear to you to be just between them. If you shall reject the notes as false and spurious, the defendant will then be entitled to your verdict for so much as you shall find to be due to him. You must do this, under the provisions of the act of assembly of this state, by finding a verdict for the defendant, and certifying the amount you find to be due to him.

Verdict for the defendant, with a certificate that there is due to him from the plaintiff the sum of 404 dollars 53 cents.

It would seem that the jury admitted that the notes were genuine, for the account of the defendant against the plaintiff was upwards of 1700 dollars, exclusive of the 300 dollar note.